IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALEJANDRO PLASENCIA
ITURRIAGA,

        Petitioner,

    v.

WARDEN, *Pike County Correctional
Facility*,

        Respondent.

No. 4:26-CV-01084

(Chief Judge Brann)

## MEMORANDUM OPINION

### MAY 28, 2026

## I.  BACKGROUND

Alejandro Plasencia Iturriaga, currently a detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), has filed this amended 28 U.S.C. § 2241 petition seeking his release from ICE custody.[1] Plasencia Iturriaga is currently detained at the Pike County Correctional Facility located within the Middle District of Pennsylvania.[2]

Plasencia Iturriaga, a citizen and native of the Republic of Cuba, entered the United States of America in January of 2024 and was paroled under the Cuban Humanitarian Parole Program.[3] On February 25, 2026, Plasencia Iturriaga was

---

[1]   Doc. 5.
[2]   *Id.* at 4.
[3]   Doc. 9-2 at 4.

arrested by ICE while leaving his home in the morning, and he has remained in ICE custody since that date.[4]

In April of 2026, Plasencia Iturriaga filed this § 2241 petition seeking release from custody, asserting that his continued detention without a bond hearing violates his due process rights.[5] He contends that, because he was detained inside of the United States, his detention is governed by 8 U.S.C. § 1226(a), and the Government is incorrect that 8 U.S.C. § 1225(b)—which provides for mandatory detention without a bond hearing—applies to him.[6]

Respondent asserts that § 1225(b) applies to all individuals who are not inspected and lawfully admitted to the country, regardless of whether they manage to enter the country surreptitiously, and Plasencia Iturriaga is therefore subject to mandatory detention without a bond hearing.[7] Moreover, Respondent contends that Plasencia Iturriaga's continued detention without a bond hearing does not violate his due process rights.[8]

Plasencia Iturriaga has filed a reply brief,[9] rendering this matter ripe for disposition. For the reasons discussed below, the petition will be granted.

---

[4]  *Id.* at 3.
[5]  *See* Doc. 5.
[6]  *Id.* at 7-12.
[7]  Doc. 9 at 4-21.
[8]  *Id.* at 21-26.
[9]  Doc 10.

2

## II.    DISCUSSION

Plasencia Iturriaga brings his claims pursuant to 28 U.S.C. § 2241, which provides, as relevant here, that it applies to any individual who "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States."[10] As the Supreme Court of the United States has emphasized, when ICE detainees challenge "their confinement" pending removal, "their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in" a 28 U.S.C. § 2241 petition.[11] Plasencia Iturriaga's claims are therefore properly brought in this petition.

The determination of whether Plasencia Iturriaga is improperly detained requires an examination of two separate provisions in immigration law: 8 U.S.C. § 1225(b) and 8 U.S.C. § 1226(a). Section 1225(b) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal hearings.[12] In contrast, 8 U.S.C. § 1226(a) states only that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." In accordance with that language, "[f]ederal regulations provide that aliens detained

---

[10]   28 U.S.C. § 2241(c)(2).
[11]   *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025).
[12]   8 U.S.C. § 1225(b)(2)(A).

under § 1226(a) receive bond hearings at the outset of detention."[13] These two provisions therefore provide for opposite outcomes: under § 1225(b) Plasencia Iturriaga may not receive a bond hearing, but under § 1226(a) he must receive a hearing. The Court therefore examines each statute to determine which applies to Plasencia Iturriaga.

Turning first to 8 U.S.C. § 1225, as the United States Court of Appeals for the Second Circuit recently observed, to trigger § 1225(b)(2)(A), an individual must be (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted.[14] Consequently, "Section 1225(b)(2)(A) . . . applies only to a noncitizen who is both an 'applicant for admission' and who is 'seeking admission.'"[15]

Section 1225 defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)."[16] While applicable federal law does not define "alien seeking admission," courts construe the plain language of "seeking admission" to describe "active and

---

[13]  *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).
[14]  *Cunha v. Freden*, __ F.3d __, __, No. 25-3141-PR, 2026 WL 1146044, at *5 (2d Cir. Apr. 28, 2026)).
[15]  *Id.*
[16]  8 U.S.C. § 1225(a)(1).

ongoing conduct, such as physically attempting to come into the United States at a border or port of entry."[17]

Courts have observed that such a "reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*,"[18] wherein the Supreme Court "noted [that] § 1225(b) applies primarily to aliens seeking entry into the United States."[19] That reading of "seeking admission" further "preserves a distinction between 'seeking admission' and the separate term 'applicant for admission,' ensuring that each phrase carries independent meaning."[20] In sum, a plain reading of § 1225(b) demonstrates that it applies to individuals who are attempting to enter the United States, not those already within the country.

With respect to § 1226(a), the Supreme Court has been explicit that "§ 1226 applies to aliens already present in the United States."[21] That section "creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings" and "permit[ting] the Attorney General to release those aliens on bond."[22] Therefore, while § 1225(b) applies to individuals detained while entering or attempting to enter

---

[17]   *Ramirez-Montoya v. Rose*, No. 3:25-CV-02411, 2025 WL 3709045, at *4 (M.D. Pa. Dec. 22, 2025) (collecting cases).
[18]   *Id.*
[19]   *Jennings*, 583 U.S. at 297.
[20]   *Ramirez-Montoya*, 2025 WL 3709045, at *4.
[21]   *Jennings*, 583 U.S. at 303.
[22]   *Id.*

the country, § 1226(a) applies generally to those who are detained within the country.[23]

These definitions create dual tracks: if an individual is detained attempting to enter the country illegally or while otherwise presenting themselves for inspection and entry, they are subject to mandatory detention pursuant to § 1225(b). If they are arrested after having already entered the country, they are subject to detention under § 1226(a) and are entitled to a bond hearing.

Applying that distinction here, Plasencia Iturriaga must be detained pursuant to § 1226(a) and is therefore entitled to a bond hearing. Plasencia Iturriaga entered the United States in January of 2024 and, at that time, he could reasonably have been construed as seeking admission and therefore as an individual governed by § 1225(b).[24] However, he was not arrested and detained until February of 2026[25] after having resided "in the United States for an extended period of time"; accordingly he is no longer seeking admission and "§ 1226(a), not § 1225(b)(2)(A), applies to" Plasencia Iturriaga during his detention.[26] Because § 1226(a) applies,

---

[23] *See Cunha*, __ F.3d at __, 2026 WL 1146044 at *5-6 ("Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission" while "Section 1225(b)(2) . . . applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization").

[24] Doc. 9-2 at 4.

[25] *Id.* at 3.

[26] *Ramirez-Montoya*, 2025 WL 3709045, at *5.

mandatory detention is not warranted, and he must be provided with a bond hearing.[27]

Having determined that Plasencia Iturriaga is being detained under the wrong section of immigration law and is improperly being denied a bond hearing, the Court must next determine whether Respondent's actions violate Plasencia Iturriaga's Fifth Amendment Due Process rights.[28]

The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property without due process of law." That Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,"[29] and therefore individuals "facing removal are entitled to due process."[30]

This Court applies the balancing test developed in *Mathews v. Eldridge*[31] to determine whether the failure to provide Plasencia Iturriaga with a bond hearing under § 1226(a) violates his due process rights.[32] Under that test, courts must consider

---

[27]  *See, e.g., Patel v. O'Neil*, No. 3:25-CV-2185, 2025 WL 3516865, at *5 (M.D. Pa. Dec. 8, 2025) (finding in similar circumstances that § 1226(a) applies).

[28]  Plasencia Iturriaga raises other claims in addition to his due process claim. Doc. 5 at 17-18. However, because this Court resolves the petition on the due process claim, it need not consider the remaining claims.

[29]  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

[30]  *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001).

[31]  424 U.S. 319, 335 (1976).

[32]  *Cf. Sewak v. I.N.S.*, 900 F.2d 667, 674 (3d Cir. 1990) (applying that test to determine whether applicable deportation regulations were capable of protecting an individual's due process rights).

three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[33]

The first factor weighs heavily in favor of concluding that Respondent's actions have deprived Plasencia Iturriaga of his due process rights, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."[34] The second factor likewise favors Plasencia Iturriaga, since "he is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing."[35]

Finally, as other courts have observed, the Government does have an interest in detaining noncitizens to ensure "'the appearance of aliens at future immigration proceedings' and 'prevent[] danger to the community.'"[36] These interests certainly justify detaining individuals in appropriate circumstances. But they cannot weigh in favor of Respondent when he is denying wholesale a bond hearing—the very purposes of which is to establish whether an individual "poses [a] flight risk [or a]

---

[33] *Mathews*, 424 U.S. at 335.

[34] *Zadvydas*, 533 U.S. at 690. *See also Patel*, 2025 WL 3516865, at *6; *Ramirez-Montoya*, 2025 WL 3709045, at *6.

[35] *Patel*, 2025 WL 3516865, at *6 (quoting *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025)).

[36] *Soto*, 2025 WL 2976572, at *8 (quoting *Zadvydas*, 533 U.S. at 690).

danger to the community."[37] In balancing these three factors then, it is clear that Plasencia Iturriaga's continued detention without a bond hearing violates his due process rights. Consequently, the Court will grant his § 2241 petition.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Respondent has violated Plasencia Iturriaga's due process rights by detaining him without a bond hearing. Accordingly, his petition will be granted, and the Government will be required to release Plasencia Iturriaga from custody.[38]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[37] *Ramirez-Montoya*, 2025 WL 3709045, at *4 (internal quotation marks omitted).

[38] It is the Court's ordinary practice when handling similar § 2241 petitions to direct the Government to provide petitioners with a bond hearing in accordance with 8 U.S.C. § 1226(a). However, given that Plasencia Iturriaga has no criminal history, has worked lawfully and paid taxes while in this country, and his I-130 petition has been approved based upon his marriage to a United States citizen, it would appear that he is eligible for an adjustment of status. Keeping him detained under these circumstances would serve no legitimate benefit, and directing a bond hearing would be a waste of time and judicial resources.